In re ELECTION OF DIRECTORS OF NEW YORK & WESTCHESTER TOWN-SITE CO.

(Supreme Court, Appellate Division, Second Department. June 29, 1911.)

1. INJUNCTION (§ 230*)—VIOLATION—PUNISHMENT.
    On motion for punishment for violation of an injunction, it belongs in the first instance to the court which made the order, sitting at Special Term, to construe its provisions and determine the meaning thereof.
    [Ed. Note.—For other cases, see Injunction, Dec. Dig. § 230.*]

2. CORPORATIONS (§ 98*)—SUBSCRIPTIONS TO STOCK—ISSUE OF STOCK.
    In proceedings involving the election of corporate officers and a forfeiture of corporate stock, the court ordered that pending a new election the acting officers should be restrained from issuing any stock or voting bonds or contracting therefor, providing nothing therein should be taken to adjudicate the question of the validity of an alleged settlement of stock of the N. Securities Company. It appeared that a delinquent subscriber had transferred his stock to the N. Securities Company, which was a holding company, and that subsequently proceedings had been taken to forfeit that stock, and the holding company proposed that, inasmuch as a certain amount had been paid into the treasury on account of stock subscribed, said company would add an additional sum in cash, in consideration of which the holding company's first shares of stock should be canceled, and there be issued to it full-paid nonassessable stock at par value to a certain amount. The proposition was accepted, certifi-

cates representing the first shares were marked canceled, and others marked full-paid and nonassessable were issued, but on communication from the holders of voting bonds of the company, protesting against such action, the holding company and its transferee returned the nonassessable certificates stamped canceled, and the original certificates with the cancellation erased were returned. *Held* not such an issue of stock as, in the meaning of the order, to constitute a violation thereof.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 98.*]

3. CORPORATIONS (§ 283*)—ELECTION OF OFFICERS—REVIEW BY COURTS.
In a special proceeding to review the validity of an election of directors of a corporation, the courts should not assume to decide that stockholders who on the face of the records contained in the stock books have the right to vote at such election should not be permitted to vote.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 283.*]

Appeals from Special Term, Westchester County.

Petition by Robert E. Robinson and others against Jacob Leitner and others. Appeal from an order passing on the rights of reissued stock to vote and denying motion to punish for contempt. Reversed in part, modified, and affirmed.

See, also, 130 N. Y. Supp. 414.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

R. Floyd Clarke (Robert R. Reed, on the brief), for petitioners.

George S. Graham (J. Addison Young, on the brief), for defendants.

BURR, J. On February 25, 1911, the petitioners made a motion in the above-entitled proceeding to punish the individual defendants and the Railways Company General and the Nassau Securities & Holding Company for a violation of the injunction contained in the order entered herein on February 9th, directing that a new election should be held for directors of the New York & Westchester Town-Site Company, as well as for other and further relief. The court denied the motion to punish for contempt, but included in the order certain directions additional to those contained in the order of February 9th with regard to the time and manner of holding the election, and with regard to what stock should be entitled to vote thereat. The petitioners appeal from so much of the order as denies the motion to punish for contempt the individual defendants and the acting directors and officers of the town-site company unless they at once procure the delivery and cancellation of certain stock certificates delivered to the Nassau Securities & Holding Company as hereinafter described, and from so much of the order as refuses to declare that the proceedings and things done to reissue said stock to the Nassau Securities & Holding Company should be held void, and from so much of the order as refuses to punish for contempt the Nassau Securities & Holding Company, the Railways Company General, and their officers, respectively. The individual defendants and the New York & Westchester Town-Site Company and the Railways Company General appeal from the whole of said order, including that part which denied the application to punish them for contempt. The or-

der of February 9th entered in these proceedings contained this among other provisions:

"Ordered that pending said new election the acting directors and officers of said company be and they hereby are restrained from * * * issuing any stock or voting bonds or contracting therefor. Provided that nothing herein shall be taken to adjudicate the question of the validity of the alleged settlement of the stock of the Nassau Securities Company."

Petitioners contend that this clause of the order was violated, and in this manner: Among the original subscribers to the capital stock of the New York & Westchester Town-Site Company was Ralph Polk Buell, who subscribed for 33,100 shares. At the date of the meeting of July 8, 1908, the proceedings in which were considered on the previous appeal, he was in default. Subsequently he transferred his stock to the Nassau Securities & Holding Company. This stock was not included in the resolution of forfeiture of September 14, 1908. Subsequently proceedings were taken to forfeit that stock, and at a special meeting of the board of directors of the town-site company, held on December 29, 1908, a proposition was received from the Nassau Securities & Holding Company substantially as follows: Reciting that $33,100 had been paid into the treasury of the company on account of the stock subscribed for and held by it, said company proposed to pay $2,900 more, making $36,000 in all. In consideration of this payment, the Nassau Securities company asked that its subscription to the 33,100 shares of stock be canceled, and that there be issued to it full-paid nonassessable stock at par of the value of $18,000. This would represent 3,600 shares. The effect of this would be that, while $2,900 was added to the cash in the treasury of the town-site company, liability to it for the payment by the subscriber or the securities company of further sums on the stock subscriptions would be avoided. The proposition was accepted; the certificates representing the 33,100 shares were turned in to the company and marked canceled, and 3,600 shares of full-paid nonassessable stock were issued. This stock was subsequently transferred to the Railways Company General. At about the time that the decision was rendered in this proceeding setting aside the election in October, 1908, a communication was received from the holders of certain voting bonds of the company, of the par value of $12,500, protesting against the action of the board of the town-site company in attempting to release the Nassau Securities & Holding Company from its liability on its subscriptions, and demanding that such action be rescinded. The Nassau Securities & Holding Company seem at about the same time to have suddenly become impressed with the conviction that such action of the town-site board was ultra vires and void, and the directors of that board seem likewise to have met with a change of heart. The Nassau Securities & Holding Company and the Railways Company General, its transferee, offered to return to the town-site company the certificate for 3,600 shares of full-paid nonassessable stock, and demanded the return of the certificates for the 33,100 shares of stock upon which the subscription was only partially paid. This demand was accompanied with an offer that upon receiving these certificates the full amount still remaining unpaid up-

on such subscriptions should be paid. On the 10th day of February, 1911, the board of directors of the town-site company adopted a resolution rescinding its action of December 29, 1908. Thereupon the certificate for 3,600 shares of full-paid nonassessable stock was returned to and accepted by the town-site company, the certificate itself was stamped canceled, the words which had previously been stamped upon the certificate for the 33,100 shares of unpaid stock, indicating the cancellation thereof, were erased, and these certificates were returned to the Railways Company General, and payment of $129,500, the amount remaining unpaid upon such subscription, was made by crediting that sum upon certain promissory notes of the town-site company held by the Railways Company General. Appropriate entries were made in the stock ledger of the town-site company showing these transactions.

[1] It is this action which was taken on February 10, 1911, the day after the restraining order above referred to was finally settled and signed, which it is claimed by the petitioners was in violation of the injunctive provisions thereof. It belongs in the first instance to the court which made the order, sitting at Special Term, to construe its provisions and determine the meaning thereof.

[2] It has decided that this transaction was not such an issue of stock within the meaning of the order of February 9th as to constitute a contemptuous violation of the order. In view of the form of the order and the language employed, we are not prepared to say that it was. In a sense it was not the issue of new stock, but a return to the holders thereof of stock improperly surrendered and illegally canceled. So far, therefore, as the order denies the motion to punish for contempt, it should be affirmed.

But the order appealed from went much further. While refusing to punish the parties for contempt, or to adjudicate the question of the validity of the alleged settlement of the stock of the Nassau Securities & Holding Company, under the resolution of December 29, 1908, the court did assume to decide that the proceedings to revoke such attempted settlement, and the return of the stock in the manner above described was in violation of the order of February 9th and it enjoined all of the officers, directors, and stockholders of the New York & Westchester Town-Site Company, the Nassau Securities & Holding Company, and the Railways Company General from voting at the new election to be held upon 29,500 shares of said stock, and enjoined and restrained the inspectors at such election from receiving or counting any vote or ballot, in person or by proxy, based thereon. If the surrender of the new and the return of the old certificate was in violation of the order of the court at Special Term, it should have punished the offending parties for contempt. It is seemingly inconsistent for the court to say that no contempt has been committed, and yet assume to construe the conduct of the parties as if in violation of its order.

[3] But beyond that, in assuming to decide in this proceeding that stockholders who upon the face of the records contained in the stock books have the right to vote at such election shall not be permitted

to vote thereon, we think the court exceeded its power. This is a special proceeding, brought for a particular purpose, namely, to review the validity of an election held for directors of the town-site company in October, 1910. At the present time, we express no opinion upon the validity of the transaction of December 29, 1908, or the subsequent one of February 10, 1911; and this for the reason that in this proceeding the court has jurisdiction neither of the parties nor of the subject-matter. The validity of these transactions can only be determined either in an action brought for that purpose, to which all persons interested or affected by the decision thereon shall be parties, or possibly by a proceeding taken to review the new election, provided the inspectors of election shall err in their determination as to whether such stock is votable. People ex rel. Putzel v. Simonson, 61 Hun, 338, 16 N. Y. Supp. 118; Matter of Petition of Argus Co., 138 N. Y. 557, 34 N. E. 388; Matter of Utica Fire Alarm Telegraph Co., 115 App. Div. 821, 101 N. Y. Supp. 109; Matter of Glen Salt Co., 17 App. Div. 234, 45 N. Y. Supp. 568, affirmed 153 N. Y. 688, 48 N. E. 1104. It may be that at the new election the Railways Company General will not attempt to vote upon the reissued stock. If it does, its right so to do must be determined in appropriate proceedings.

It follows that so much of the order as passes upon the rights of the holders of such reissued stock to vote thereon at the new election must be reversed, and, as thus modified, the said order appealed from should be affirmed, without costs to either party as against the other. All concur.