ROBERT FLEER,

*vs.*

FRANK H. FLEER CORPORATION, a corporation existing under the laws of the State of Delaware, GILBERT B. MUSTIN, NEILSON M. MATTHEWS, WALTER HENTSCHEL, M. RUSSELL BERGER, H. E. POTTER and E. W. HOPPER.

*New Castle, June 30, 1924.*

Bill by stockholder against corporation seeking cancellation of contracts between corporation and its officers and to have a stockholders' meeting declared void, and to secure holding of another stockholders' meeting and cancellation of stock issued to officers pursuant to their contracts, *held* not multifarious as joining corporate with individual grievances.

Bill by stockholder against corporation seeking cancellation of contracts between corporation and its officers was not defective for failure to show an application to and refusal by corporation to proceed in its own name, or to show reasons why such application was not made, where a request to corporation to undo wrongs complained of would have been directed to a board under control of wrongdoing officers, and which was powerless to act unless one or both of such wrongdoers gave approval, regardless of associates' willingness.

Where stockholders assert a right on behalf of corporation, their right to do so is strictly derivative, and cause of action belongs to corporation, and stockholders cannot sue for it unless corporation has first been requested to sue and by positive declination or willful omission refused to do so.

Generally equity will not take jurisdiction to determine legality of election or qualification of directors of private corporations.

Equity has jurisdiction to pass upon an election of directors at annual stockholders' meeting irrespective of general principles of equitable jurisdiction, in view of 33 *Del. Laws, c.* 104, conferring on Court of Chancery jurisdiction to determine validity of any election of any director or officer of any corporation organized under *General Corporation Law.*

In a bill by stockholder under 33 *Del. Laws, c.* 104, against a corporation seeking to have election of directors at stockholders' meeting declared void, equity *held* to have jurisdiction to determine whether stock which was not of record should have been allowed to vote at such meeting.

Where proceeding by stockholder on behalf of himself and other stockholders to determine validity of corporate election under 33 *Del. Laws, c.* 104, is invoked not to assert an individual's claim to corporate office, but to

ascertain whether corporation's entire affairs have been unlawfully usurped by individuals through wrongful conduct at a stockholders' meeting, grievance is one which is common to entire corporate body.

Bill in class suit by stockholder attacking validity of corporate election under 33 *Del. Laws, c.* 104, making its remedies available upon the application of any stockholder, *held* not objectionable on ground that such statute indicates a right which is purely individual to each stockholder in view of its manifest purpose to right wrongs done to a corporation and not to its indivudal stockholders, and in view of interpretation of same phrase in *Revised Code* 1915, § 3883, relating to appointment of receivers.

33 *Del. Laws, c.* 104, providing that Chancellor shall have power to determine validity of corporate election upon "application of any stockholder," does not require procedure to be by petition and not by bill, but authorizes the remedies to be pursued by either bill or petition, it being for complainant to select which remedy more appropriately fits his case.

BILL TO DECLARE VOID CERTAIN CONTRACTS under which certain shares of the capital stock of the defendant corporation were issued to the defendants, Gilbert B. Mustin and Neilson M. Matthews, respectively, to secure a return to said corporation of said shares of stock, to enjoin said Mustin and Matthews from voting or otherwise asserting rights of ownership of said shares, to declare void a certain meeting of stockholders of said corporation and the attempted election of directors thereat, and to secure the holding of another meeting of stockholders under the supervision of the Chancellor for the election of directors for said corporation for the year ending January 21, 1925.

The bill is filed by the complainant on behalf of himself and all other stockholders of the said corporation who may be made parties to and contribute to the expense of the suit. The board of directors consists of four members. The stockholders are alleged to be divided into two groups who are in disagreement as to the policies to be pursued by the corporation, the complainant being associated with one group and the defendants Mustin and Matthews, whose acts are complained of, being associated with the other group. On the eve of the annual stockholders' meeting to be held on January 21, 1924, the stockholdings of the two groups were as follows: 1,301.25 shares of stock held by the complainant and his associates, and 1,298.75 shares held by Mustin and Matthews and their associates.

The bill charges that with the design of controlling the voting stock of the corporation and through it to secure control of the board of directors, Mustin and Matthews who were directors and respectively president and vice-president of the corporation, and who dominated and controlled the board, did two things, viz., (a) they caused to be executed two contracts ostensibly on behalf of the corporation, one with each of themselves, whereby the corporation became obligated to issue certain shares of stock to each of them, which contracts are alleged never to have been authorized or, if so, never to have been properly authorized, by the board of directors of the corporation and which contracts, it is alleged, the directors of the corporation could not lawfully authorize; and, having assumed to bind the corporation by these contracts, they afterwards, to-wit, on December 15, 1923, just prior to the annual meeting of stockholders which was to be held and was held on January 21, 1924, caused to be issued to each of themselves 63⅓ shares of the voting stock of the corporation, notwithstanding the protest of the complainant and those stockholders associated with him, and notwithstanding the fact that the alleged contracts under which said shares were issued were illegal and void; (b) they (Mustin and Matthews) in pursuance of a plan and scheme to control the said annual meeting of the stockholders, by certain false and fraudulent representations made to one Searles, who was the then owner of ten shares of the common stock of the corporation, induced him to colorably assign and transfer five of his said shares to the corporation, whereby the said Mustin and Matthews were able to secure control of the annual meeting of stockholders irrespective of the said 63⅓ shares of stock so as aforesaid issued to each of them.

The bill further alleges that the annual meeting of stockholders was held on January 21, 1924; that Mustin and Matthews voted at said meeting 1,425.41 shares which included the 126⅔ shares issued to the two of them in the manner above set forth for the set of directors nominated by themselves; that the complainant and his associates voted 1,291.25 shares of stock held by them for another set of directors; and that the said Searles attempted to vote his ten shares of stock as did the complainant and his associates, but that the said Mustin and Matthews would not

permit the Searles stock to be counted, all of which was contrary to the protests of the complainant. The bill does not specifically so state, but its plain inferences are that the directors voted for by the Mustin-Matthews group were declared elected and are now in charge of the corporation's affairs.

It is further alleged that the issuance of the 63⅓ shares to Mustin and Matthews respectively was in violation of the pre-emptive rights of other stockholders. But no relief is asked for on this ground, none at least to the extent of letting the complainant and all other stockholders in for a *pro rata* subscription to the shares thus attempted to be issued.

The prayers are, that the two alleged contracts be decreed to be void and cancelled; that the stock issued under them be decreed to be returned to the corporation; that an injunction issue against the corporation and the directors elected at the annual meeting of stockholders on January 21, 1924, restraining the directors from acting as such and the corporation from permitting them to act as such; that the said annual stockholders' meeting and the election of directors thereat be decreed to be void; and that another stockholders' meeting be called and held under the supervision of the Chancellor for the election of directors.

The cause now comes on to be heard upon a demurrer to the bill, filed by the corporation defendant.

*William S. Hilles*, for the complainant.

*Aaron Finger*, for the defendant corporation.

THE CHANCELLOR. While the demurrer presents eleven grounds, the solicitor for the defendant states them generally, as follows:

1. That the bill is multifarious.

2. That insofar as there may be any right on behalf of the corporation to cancel the contracts referred to in the bill, there is no allegation that a request or demand has been made on the corporation to proceed in its own name, nor is there any allegation that the corporation has refused to cause said contracts to be cancelled, and the bill contains no allegation of reasons why demand was not made upon the corporation or that such demand, if made, would have been futile and unavailable.

3.  That as to the right to a decree declaring the election of directors at the stockholders' meeting to be void, there is no allegation that the said Searles was a stockholder of record and entitled to vote on the date of the meeting, nor does the bill set forth who the valid stockholders of record of the corporation were at the time of said meeting.

These objections will be disposed of in the order of their statement.

First.  Is the bill multifarious?  The contention in this connection is that it is not permissible to combine in one bill a demand for the assertion of rights belonging to the complainant individually with demands for the assertion of rights belonging to the corporation.  *Harden v. Eastern States Public Service Co., ante p.* 156, is cited in support of the principle contended for and supports it. That case was one where stockholders sought to secure an accounting for alleged wrongs done to the corporation, and at the same time to secure an inspection of books and papers.  It is very clear that the two purposes sought by the bill were in nowise related to each other.  While in *Hopper v. Fesler Sales Co.,* 11 *Del. Ch.* 209, 99 *Atl.* 82, it was said that one test as to whether a bill is multifarious may be to inquire whether one defense could be made to the whole bill, yet it was clearly indicated that such test was not the only one to be applied nor a fair and practicable one in all cases.  In *Cahall, Rec'r., v. Lofland, et al.,* 12 *Del. Ch.* 162, 108 *Atl.* 752, the test seems to have been whether the bill had a single object though based on three forms or groups of transactions and whether the convenient administration of justice would suggest that the various matters complained against be litigated in the same suit.  In *Ripka v. Gwinn, ante p.* 101, it was held that though fraud spreads itself out in various directions and various forms of relief are necessary to correct its wrongs, a bill which seeks these various forms of relief is not multifarious, the fraud supplying a unity of action to the various grounds of specific complaint.  It is needless to refer to the multitude of reported cases on this question of multifariousness for the purpose of endeavoring to extract therefrom general rules.  As observed in 1 *Daniell's Chancery Pleading and Practice,* (*4th Ed.*) 334:

"The cases upon the subject are extremely various; and the court, in deciding them, seems to have considered what was convenient in particular cases, rather than to have attempted to lay down an absolute rule."

Sir John Leach in *Salvidge v. Hyde*, 5 *Mad.* 146, indicated that the most satisfactory test generally speaking is to inquire whether there be singleness in the object of the suit.

What are the objects of the bill filed in the instant case? As stated by the solicitor for the defendant they are summarized, as follows:

(a) Cancellation of the contract between the corporation and Mustin.

(b) Cancellation of the contract between the corporation and Matthews.

(c) To have the stockholders' meeting of January 21, 1924, declared void and to secure the holding of another stockholders' meeting.

(d) Cancellation of the stock issued to Mustin and Matthews pursuant to their respective contracts with the corporation.

It is argued that the first two objects sought by the bill seek to secure rights which belong to the corporation and that therefore as to them the bill is properly a stockholder's bill; but that the last two objects seek to secure rights which, if they are well founded, belong to the complainant individually. If this contention be correct, then under the ruling made in *Harden v. Eastern States Public Service Co., supra,* the bill is open to the objection of being multifarious.

The error, however, in this contention is in the view that the last two objects referred to seek to secure rights which belong individually to the complainant. If the effort to cancel the contracts referred to in (a) and (b) is an assertion of a cause of action by the stockholder on behalf of the corporation, as is conceded, it is difficult to see why the effort to cancel the stock issued in pursuance of the terms of the contracts [referred to in (d)] is not an assertion of a similar cause of action. Not only the making of the contracts, but as well the carrying out and fulfillment of their terms, if a wrong at all, is a wrong done not to the complainant individually but to the corporation and through it to the whole body of stockholders. Likewise with respect to (c), viz., the object

which seeks to invalidate the stockholders' meeting of January 21, 1924, and to secure another meeting, the wrong, if any is done to the corporation and through it to the whole body of stockholders. How it can be said that a wrongful and fraudulent capture of the corporate offices of the corporation is a violation of the individual right of a particular stockholder, it is impossible to see. It is a wrong done to the corporation and the stockholders as a whole are commonly interested in its correction. With respect to the allegations in the bill that the issuance of stock to Mustin and Matthews was a wrong done in violation of the pre-emptive rights of other existing stockholders, I pass it by as of no signficance because a reading of the bill clearly shows that it does not seek relief directed to a *pro ratà* offering of the shares alleged to have been thus wrongfully issued. The allegation is to be regarded as only an incidental recital by the complainant of what is claimed to have been an ignoring of duty on the part of the directors in a particular not necessary to his case.

Insofar, therefore, as the alleged multifariousness of this bill can be said to consist in the joining of corporate grievances with individual grievances, the objection is not well taken. The case of *Harden v. Eastern States, etc., Co., supra*, therefore has no application.

Second. Is the bill defective in that it fails to show an application to and refusal by the corporation to proceed in its own name to cancel the contracts with Mustin and Matthews or to show reasons why such application was not made?

The principle is well settled that where stockholders assert a right on behalf of the corporation, their right to do so is strictly a derivative one. The cause of action belongs to the corporation and generally speaking the stockholders cannot sue for it unless the corporation has first been requested to sue and by positive declination or wilful omission refused to do so. *Harden v. Eastern States, etc., Co., supra.* But a request or demand is not necessary in all cases. When it is manifest from the circumstances that a demand would be a useless form, the same is not required as a condition precedent to the right of the stockholders to proceed. Where the demand if made would be directed to the particular individuals who themselves are the alleged wrongdoers and who

therefore would be invited to sue themselves, the rule is settled that a demand and refusal is not requisite. Such was the case in *Ellis v. Penn. Beef Co., et al.,* 9 *Del. Ch.* 213, 80 *Atl.* 666, where demand and refusal were held unnecessary. In 6 *Fletcher, Cyc. of Corp.* § 4070, may be found a statement of this exception to the general rule and a reference to many cases cited in the foot-notes in support thereof. The cases cited by the solicitor for the defendant recognize the exception. It may be, as indicated in some of the cases cited by him, that where the officers whose derelictions are complained against do not have the controlling voice in the corporation, and a supposedly impartial majority of the directors exists who presumably would respect a request made to them to proceed, such request and a refusal thereof should first be made and obtained before a stockholder should be permitted to act in behalf of the corporation. But this is not that sort of case. Here, the board of directors consists of four persons, two of whom are charged with having wrongfully secured the corporate stock and captured the corporation to the exclusion of the true majority. A request to the corporation to undo the wrongs complained of would be directed to a board alleged to be under the control of these two directors—to a board which owing to its total membership of four would at least be powerless to act unless one or both of the two alleged wrongdoers gave approval, regardless of the willingness of their associates. In these circumstances, it would be out of all reason to require stockholders as a condition precedent to their right to proceed to prefer a prior request to a board so constituted. The cases cited by the solicitor for the defendant have been examined and I find nothing in them in conflict with the conclusion that the second ground of demurrer is not well taken.

Third. Must the bill allege that Searles was a stockholder of record and entitled to vote on the date of the annual meeting? From the statement of facts preceding this opinion it will be observed that the 126⅔ shares of stock alleged to have been unlawfully issued to Mustin and Matthews might be eliminated from those voting at the stockholders' meeting and the result would have been the same unless the ten shares owned by Searles had been allowed to vote. Had the vote of his stock been received a different set of directors would have been elected. The bill al-

leges that by a false and fraudulent representation made to Searles by Mustin and Matthews to the effect that all the stockholders of the corporation had assigned one-half of their holdings to the corporation, Searles was induced to colorably assign one-half or five of his shares to the corporation. This false and fraudulent representation is alleged to have been made with the purpose of controlling the stockholders' meeting. If such was its purpose it succeeded because at the meeting Searles was not allowed to vote his stock. Why he was not allowed to vote five of his shares at least does not appear. I suppose it was for some ostensible reason connected with the operation of the transfer machinery. At all events he appears to have been disfranchised not only as to the five shares which Mustin and Matthews are charged with having fraudulently induced him to assign to the corporation, but also as to the other five shares which according to the bill he retained.

In the face of these facts the question arises as to whether it was necessary for the bill to show that at the time of the meeting Searles was a stockholder of record. Apprently he was not a stockholder of record for the reason that those who are charged with having conspired together to control the meeting had procured his disfranchisement by a trick which operated to their advantage. The question of whether under such circumstances the results of the meeting should be declared void is an important one. The demurrant made no argument with respect to it at the hearing of the demurrer. Later I requested briefs to be submitted upon the question. Though briefs have been submitted in compliance with the request, the question is not discussed therein. In this state of the matter, I shall assume that the solicitor for the defendant does not care to insist upon the point raised by his third ground of demurrer at this time. He may if he cares to do so raise it later. The overruling of the demurrer will amount to nothing more than a reservation of the point for disposition at a later stage in case it is again raised.

At the argument and on the briefs much was said concerning the jurisdiction of the Court of Chancery to hear and determine the title to corporate offices under such circumstances as are disclosed by the bill filed in this case. As a general proposition it is true that a court of equity will not take jurisdiction for the pur-

pose of determining the legality of the election or the qualification of directors of private corporations. Yet where these questions arise collaterally there are cases where a court of equity will proceed to determine them. *Lippman v. Kehoe Stenograph Co.*, 11 *Del. Ch.* 412, 102 *Atl.* 988, decided by the Supreme Court of this State so holds. The complainant contends that the case presented by his bill presents a case falling within the exception to the general rule. It is unnecessary to pass on this contention. A recent statute of this State confers on this court undoubted jurisdiction to hear and determine the validity of any election of any director or officer of any corporation organized under the *General Corporation Law* of this State and in case no valid election has been held, to order a proper election to be held. 33 *Del. Laws, c.* 104, approved March 14, 1923. Whatever might be the jurisdiction of this court to pass upon the election held at the annual stockholders' meeting on January 21, 1924, under the general principles of equity jurisdiction, the statute referred to removes the question from all doubt.

The solicitor for the defendant spent considerable time in discussing this statute. Just how the views submitted by him with respect to it are pertinent to the precise causes of demurrer set forth, is not clear to me. In view of the fact that the statute is a recent one it is perhaps advisable that the particular view of it urged by the solicitor for the defendant should be commented on even though in the judgment of the court such comment is not called for by the specified grounds of demurrer.

The solicitor for the defendant contends that under such a statute as the one in question the proceeding there created is not an action, and that it is inappropriate for determining equitable claims or questions not necessarily involved in the controversy, or the validity of transactions under which persons claim the right to vote. In support of this contention he cites *In re Utica Fire Alarm Co.*, 115 *App. Div.* 821, 101 *N. Y. Supp.* 109, and *In re Election of Directors*, 145 *App. Div.* 630, 130 *N. Y. Supp.* 419. In the case first cited it appears that a petition was filed under a New York statute empowering the Supreme Court summarily to inquire into and determine the validity of elections of corporations and any proceeding, act or matter touching the same. The New

York law gave to every stockholder of record a right to vote at stockholders' meetings. The court declined, in hearing the petition filed, to pass upon the equitable claim of the person claiming to be the owner of stock standing upon the records of the corporation in the name of another. In the second case cited, the New York Appellate Division appears to have had before it for review an order made on a petition filed under the provisions of the statute of that State just referred to. It appears that the order made by the Supreme Court contained directions with regard to what stock should not be entitled to vote at an approaching stockholders' meeting which had been ordered. The Appellate Division held this aspect of the order to have been error. In the course of its opinion it said:

"The validity of these transactions can only be determined either in an action brought for that purpose, to which all persons interested or affected by the decision thereon shall be parties, or possibly by a proceeding taken to review the new election, provided the inspectors of election shall err in their determination as to whether such stock is votable."

The quoted language indicates the view of the court that questions arising out of the transactions there involved might have been agitated under a petition to review the election filed under the statute referred to. The controversy in that case concerned the question of whether stock of record ought to have been allowed to vote, and the quotation from the opinion indicates that such a question might properly be litigated in a proceeding of this nature. Here the converse of that question is present, viz., whether stock which is not of record ought under the circumstances have been allowed to vote. It is hard to distinguish in principle the two cases. It is obviously true that in a proceeding of the instant kind it would be improper for the court to undertake to adjust equitable controversies between stockholders of record and adverse claimants, which controversies are purely collateral to the question of whether the meeting was legally held. Where, however, the controversy is something that goes to the fundamental proposition upon which the alleged illegality of the meeting is charged to have been based, I can see no impropriety in a hearing and determination by the court of that controversy. The New York cases cited above do not conflict with this view. On the

contrary *In re Election of Directors, supra,* is in harmony with it insofar as the language of the opinion touches the point.

The solicitor for the defendant argues that the statute creates only an individual right in the stockholder to have an election declared void or a corporate office determined to be wrongfully held. This view has already been noted and rejected. It seems to me to be clearly an erroneous one. It may be that when a rival claimant to a corporate office is seeking to secure its possession from an incumbent the proceeding under the statute would present the features of an individual contest. Though even such a case may be debatable. But where as here the proceeding is invoked not to assert an individual's claim to an office, but to ascertain whether the corporation's entire affairs have been unlawfully usurped by individuals through wrongful conduct and trickery at a stockholders' meeting, it is impossible for me to see how the grievance can be other than one which is common to the entire corporate body.

It is further argued that the language of the statute in making its remedies available "upon the application of a stockholder" indicates a right which is purely individual to each stockholder. This contention does not appeal to my judgment. The broad purpose of the statute, its evident object and intent, rather than the wording of some phrase in its composition must give to it its character. Its manifest purpose is to right wrongs done to a corporation, not to its individual stockholders, through the unlawful usurpation of its management and offices by persons not entitled thereto. The same phrase, "on the application * * of * * any stockholder," appears in *Section* 3883 of the *Revised Code of* 1915 where the Chancellor is authorized to appoint receivers for insolvent corporations. Receivership causes under that section have always been regarded as presenting class suits and not as constituting suits in which an individual right is asserted. The phrase referred to has never been thought of as indicating anything to the contrary.

It is also contended that the procedure to be followed under the statute now under discussion is by way of petition, and that the remedies afforded by it cannot be pursued by bill as is attempted in this case. This argument rests on the phrase above

referred to, viz., "application of any stockholder," and is fortified, says the defendant, by the further provision that the remedies are to be afforded not by the Court of Chancery but by the Chancellor. Again it is to be noted that the section above referred to providing for the appointment of receivers for insolvent corporations is worded very much in the same way. There the language is that "the Chancellor" may on the "application of any stockholder" appoint receivers. The practice under that statute is invariably to make the application in the form of a bill in equity. Nor is any significance to be attached to the designation by the statute of "the Chancellor" as having the power to administer the remedy. In *Mackenzie Oil Co. v. Omar Oil & Gas Co., ante p.* 36, it was held that jurisdiction under the receivership statute was conferred upon the Court of Chancery as distinguished from the Chancellor, notwithstanding the literal language of the statute. And so here the jurisdiction is conferred on the Court of Chancery. If so, what procedure should be followed? May the usual procedure of a bill in equity be resorted to? By analogy to the procedure under the receivership statute, it undoubtedly may be. Furthermore, the statute (33 *Del. Laws, c.* 104) itself contains language which indicates that the procedure thereunder might be by bill for it authorizes the Chancellor *inter alia* to make such "decree" as may be just and proper. But I am of opinion that the procedure may also be by petition, because the statute specially refers to service of copies of the "petition." No provision to be sure is made for service to be had upon a bill filed. But this is of no significance, Chancery procedure already providing by its rules therefor. It is of course desirable that procedure in a given class of cases should be as nearly uniform as possible. But this desideratum ought not to so dominate the pursuit of remedies as to expose an unyielding front to considerations that have to do with convenience and expedition in the administration of justice. If the remedies provided for by the statute are to be invariably pursued by a bill in equity the salutary purposes which it seeks to promote will oftentimes be frustrated by the more leisurely procedure incidental to remedy by bill; whereas if petitions be also allowable the controversy may be moved forward with greater expedition and therefore to a

timely and more efficacious result. In my opinion the remedies provided by this statute may be pursued either by bill or by petition. It is for the person making the complaint to select which remedy more appropriately fits his case. It is entirely conceivable that some cases would be rather incongruous when appearing in a petition. The instant case would appear to supply an illustration of this. But this much at least would seem to be unquestionably true—that no defendant could feel justly aggrieved if instead of being brought into court by a petition with its faster moving procedure he is brought in by bill with its more deliberate advance to a decree.

The above views are expressed notwithstanding the demurrer raises no questions which call for their announcement.

The demurrer will be overruled. Let an order be entered accordingly.