In re ARDENT, INC., et al., Debtors.

No. 01–02086.

United States Bankruptcy Court, District of Columbia.

Nov. 16, 2001.

Michael J. Lichtenstein, Esq., Swidler Berlin Shereff, Friedman, LLP, Washington, DC, for Debtors.

Michael L. Bernstein, Esq., Arnold & Porter, Washington, DC, for Official Committee of Unsecured Creditors.

Robert E. Winter, Esq., O'Melveny & Myers LLP, Washington, DC, for Movants.

## DECISION RE EMERGENCY MOTION SEEKING RELIEF REGARDING NON–COMPETITION PROVISIONS IN MERGER AGREEMENT

S. MARTIN TEEL, Bankruptcy Judge.

Kim Kao and Amy Hsiao ("the Movants") seek to compete with CAIS Internet, Inc. ("CAIS"), one of the debtors in this jointly administered case, despite an agreement not to compete with CAIS. They assert that CAIS has breached its obligation, under the same agreement, to issue them shares of CAIS stock, thus relieving them of any further obligation to perform their non-competition covenants. In pursuit of their goal of competing with CAIS, they have filed a motion ("the Motion") styled:

Emergency Motion for Order to Compel Rejection of Merger Agreement Pursuant to 11 U.S.C. § 365(d)(2), Or, Alternatively, for Declaration That Automatic Stay Does Not Prevent Treatment of Merger Agreement as Terminated.

Over the objection of the debtors and the creditors' committee, the Motion will be granted in large part.

I

Prior to September 7, 1999, the Movants were the sole shareholders of Business Anywhere, USA, Inc. ("BAC"). On September 7, 1999, the Movants entered into a merger agreement ("the Merger Agreement") with CAIS under which CAIS was to become the sole shareholder of BAC. CAIS was required to issue shares of CAIS's stock to the Movants as part of the consideration for the merger. Specifically, CAIS was obligated to pay the Movants $200,000 cash on the date of the Merger Agreement (September 7, 1999), plus issue to the Movants, in three installments, shares of CAIS common stock having the following values based on the average closing price of such shares for the last ten trading days preceding the respective required issuance date:

September 7, 1999: CAIS shares worth $1,500,000;

September 7, 2000: CAIS shares worth $1,000,000; and

September 7, 2001: CAIS shares worth $1,000,000.

AGGREGATE WORTH OF SHARES: $3,500,000.

CAIS issued to the Movants the initial $1,500,000 worth of shares plus the first additional $1,000,000 worth of shares, but failed to issue to the Movants the second additional $1,000,000 worth of shares. In total, the merger agreement provided for consideration to the Movants of $200,000 cash (so-called "boot") plus the issuance to the Movants of $3.5 million of shares of CAIS common stock.[1] The $1,000,000 worth of shares required to be issued on September 7, 2001 does not represent an insignificant part of the total consideration.

## II

■ For reasons discussed below, the court concludes that 11 U.S.C. § 365(c)(2) bars CAIS from assuming the Merger Agreement because it is a contract "to issue a security of the debtor" as that phrase is used in § 365(c)(2). In pertinent part, § 365(c)(2) provides:

> The trustee may not assume or assign an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if
>
> . . .
>
> (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, *or to issue a security of the debtor.* [Emphasis added.]

The contract here was plainly one for the issuance of securities of the debtor.

## III

The debtor contends that the Merger Agreement is not a contract "to issue a security of the debtor." For support, the debtor relies upon Judge Bernstein's ruling in *In re Teligent,* 268 B.R. 723 (Bankr. S.D.N.Y.2001). In *In re Teligent,* the court was confronted with facts similar to the instant case, and stated, although "issue" is undefined, there is no evidence that the drafters intended to deviate from the ordinary meaning under which the corporation is the one that "issues" its own "securities." *Id.* at 734–35. In divining the "ordinary meaning" of "issue," the court reasoned:

> In its ordinary commercial sense, to "issue" securities or stock means "to emit, put into circulation, or dispose of securities already authorized and prepared for disposition," *Scott v. Abbott,* 160 F. 573, 577 (8th Cir.), *cert. denied,* 212 U.S. 571, 29 S.Ct. 682, 53 L.Ed. 655 (1908) (internal quotation marks omitted); *accord Blythe v. Doheny,* 73 F.2d 799, 803 (9th Cir.1934); *Anadarko Petroleum Corp. v. Panhandle E. Corp.,* 1987 WL 13520, at *4 (Del.Ch. July 7, 1987); 11 *Timothy P. Bjur, et al., Fletcher Cyclopedia of the Law of Private Corporations* § 5126, at 175 (Perm. Ed. rev.1995) ("*Fletcher*"), to a specified shareholder. The commercial usage seems to refer to the disposition of newly created rather than

---

1. The debtors argue that the predominant character of the transaction must take into account two additional forms of consideration paid the Movants. First, CAIS was required to pay $500,000 in debts of BAC, a portion of which were owed to the Movants. The court fails to see how that $500,000 that was owed by BAC—an entity that was deemed to have value in excess of $3.5 million—can be treated as representing meaningfully significant additional consideration to the Movants: they would have been entitled to pursue BAC for payment of the portion of the $500,000 owed to them had CAIS not agreed to pay the debt.

Second, CAIS was required to enter into an employment agreement with Mr. Kao and a consulting agreement with Ms. Hsiao, but the debtors and the creditor committee do not suggest that the services of Mr. Kao and Ms. Hsiao were not worth the salary paid Mr. Kao or the consulting fees paid Ms. Hsiao.

existing stock. *See In re Election of Directors of New York & Westchester Town–Site Co.*, 145 A.D. 630, 130 N.Y.S. 419, 422 (N.Y.App.Div.1911). Finally, while others may transfer a corporation's security, only the corporation appears capable of "issuing" it. *Id.* at 731–32. For purposes of ruling on the Motion, the court need not disagree with the *In re Teligent* court's definition of "issue," since the transaction contemplated by the Merger Agreement, as it relates to the delivery of the third installment of stock, clearly contemplates that the stock would be issued as defined by the court in *In re Teligent.* Specifically, the Merger Agreement provides, in relevant part:

> The shares of CAIS Common Stock issued in connection with the Merger (including the shares issued as part of the Initial Consideration Shares and the Additional Consideration) [2] will not be registered under the Securities Act of 1933, as amended ("Securities Act"), except as provided in the Registration Rights and Lock-up Agreement attached hereto as *Exhibit D.* Such shares may not be transferred or resold thereafter, except in compliance with the terms of this Agreement and the other Transactional Agreements and following registration under the Securities Act or in reliance on an exemption from registration under the Securities Act.

Agreement and Plan of Merger, ¶ 2.7.

Rather than the definition of "issue," standing by itself, the question before the court is whether the Merger Agreement is a contract "to issue a security of the debtor." Clearly, it is. The court in *In re Teligent* found ambiguity in the word "issue," when used in the context of a contract "to issue a security of the debtor," and thus resorted to the legislative history of § 365(c)(2). However, there is no ambiguity in § 365(c)(2) which justifies such resort. Once one accepts the definition of "issue" ascribed by the court in *In re Teligent* to the term "issue" when standing alone, the phrase "contract ... to issue a security of the debtor" is no longer ambiguous. Because such phrase has a clear and unambiguous meaning, the court need not do as the court in *In re Teligent* did and look to the legislative history of § 365(c)(2) to determine if § 362(c)(2) applies to the instant case.

Further, even if the court were to resort to the legislative history of § 365(c)(2), the court need not apply § 365(c)(2) as narrowly as the court in *In re Teligent* did. That court would limit the application of the prohibition on the assumption of a contract to issue a security of the debtor to situations in which the contract at issue obligates the non-debtor to advance new cash or credit in exchange for the debtor's note of its stock, assuming the extension of credit or the issuance of the security is not incidental to a contract for the sale of goods or service. *Id.* at 737–38. The fact that Congress enacted § 365(c)(2) to pre-

**2.** "Additional Consideration" is a defined term used in the Merger Agreement. "Additional Consideration" is defined as the Second Additional Consideration together with the First Additional Consideration. Agreement and Plan of Merger ¶ 2.1(d). "Second Additional Consideration" is defined in Paragraph 2.1(d) of the Merger Agreement, which provides in part:

> As further consideration for the Merger, CAIS shall issue to the Shareholders, as soon as practicable after the second annual anniversary date of the Closing Date (the *"Second Anniversary Date "*), an additional number of shares of CAIS Common Stock equal to (i) One Million Dollars ($1,000,000) divided by (ii) the average closing price of CAIS Common Stock on the Nasdaq Stock Market for the ten (10) trading days immediately preceding the Second Anniversary Date.

Agreement and Plan of Merger ¶ 2.1(d).

vent a trustee or debtor-in-possession from requiring new advances of money, property, or loans does not preclude the court from applying it to other executory contracts that require the transfer of other types of consideration in exchange for a debtor's securities. *Union Bank v. Wolas,* 502 U.S. 151, 158–59, 112 S.Ct. 527, 531, 116 L.Ed.2d 514, 522 (1991) ("[E]ven if Congress adopted the 1984 amendment [to § 547(c)(2) ] to redress particular problems of specific short-term creditors, it remains true that Congress redressed those problems by entirely deleting the time limitation in § 547(c)(2). The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning."); *Toibb v. Radloff,* 501 U.S. 157, 164, 111 S.Ct. 2197, 2201, 115 L.Ed.2d 145, 153 (1991) ("[I]t makes no difference whether the legislative history affirmatively reflects such an intent, because the plain language of [§ 109] allows a consumer debtor to proceed under Chapter 11.").

In *Union Bank,* a case directly analogous to the instant case, the Court recognized that Congress's amendment of § 547(c)(2), which entirely deleted the time limitation in § 547(c)(2), was an attempt to respond to complaints by issuers of commercial paper and trade creditors that the existing 45–day limitation on the exception contained in § 547(c)(2) deprived issuers of commercial paper and trade creditors, who were not long-term lenders, of the protection offered by the exception and was not an attempt to confer the same protection on long term lenders. 502 U.S. at 157, 112 S.Ct. 527. In fact, the Court noted that the legislative history of amended § 547(c)(2) provides no evidence that Congress intended to make the ordinary course of business exception available to long-term lenders. *Id.* Despite this, the Court applied the plain meaning of amend-

ed § 547(c)(2) and interpreted such section as conferring its protection upon long-term lenders. *Id.* at 163, 112 S.Ct. 527. The court will do the same in the instant case and apply the plain meaning of § 365(c)(2) to the contract to issue securities of the debtor presently before the court.

## IV

■ The debtor contends that the Merger Agreement is not a contract "to issue a security of the debtor" because stock was only a part of the consideration that the Movants were to receive pursuant to the Merger Agreement. The court rejects this argument for two reasons. First, the merger contemplated by the Merger Agreement was a merger in which the prime consideration flowing to the Movants was the issuance to them of $3.5 million worth of shares of CAIS common stock. Second, § 365(c)(2) makes no distinction between executory contracts which contemplate that securities shall be the sole consideration and executory contracts that contemplate securities shall only be one element of the consideration exchanged by the debtor. Accordingly, the court will again rely upon the plain meaning of § 365(c)(2) to reject the debtor's argument that the Merger Agreement is not a contract "to issue a security of the debtor." *Id.* at 163, 112 S.Ct. 527 (Scalia, J. concurring, "It is regrettable that we have a legal culture in which [legislative-history and policy arguments] have to be addressed (and are indeed credited by a Court of Appeals), with respect to a statute that is utterly devoid of language that could remotely be thought to distinguish between long-term and short-term debt. Since there was here no contention of a 'scrivener's error' producing an absurd result, the plain text of the statute should have made this litigation unnecessary and unmaintainable."). In doing so, the court

does not expressly reject that portion of the court's reasoning in *In re Teligent* in which the court stated, "[i]f the extension of credit or the issuance of the security is incidental to a contract for the sale of goods or services, the contract may be assumed (or rejected) notwithstanding § 365(c)(2)." *In re Teligent*, at 737–38. Because stock made up the lion's share of the consideration to be exchanged by the debtor pursuant to the Merger Agreement, the court does not deem the issuance of the stock to be incidental to the transfer of consideration contemplated by the Merger Agreement.

## V

What remedy follows? Because the executory contract is not assumable, it is appropriate to:

(1) order that CAIS be directed to reject, and be deemed to have rejected, the Merger Agreement (but only to the extent that CAIS is still obligated under the Merger Agreement to issue shares of CAIS stock to the Movants, CAIS being free to show that it has defenses relieving it of the obligation further to issue any such shares); and

(2) grant relief from the automatic stay of 11 U.S.C. § 362(a) to permit the Movants to proceed under nonbankruptcy law to defend against enforcement of the non-compete agreements in accordance with their position that the non-compete provisions are unenforceable and terminated as a matter of nonbankruptcy law, such relief to include the pursuit of any declaratory judgment action the Movants wish to pursue regarding such nonbankruptcy law defenses to the non-compete provisions.

The court declines to grant the Movants' request to treat the Merger Agreement as terminated. For one thing, the debtors wish to explore possible breaches by Ms.

Hsiao that may relieve CAIS from its obligation to issue any further shares to the Movants. For another thing, rejection of an executory contract does not necessarily result in termination of that executory contract.

An order follows.