17-2410-bk
In Re: Nanodynamics (Wallach v. Smith)

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of June, two thousand eighteen.

PRESENT: DENNIS JACOBS,
         DENNY CHIN,
         RAYMOND J. LOHIER, Jr.,
            Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X

IN RE: NANODYNAMICS, INC.,
      Debtor.

- - - - - - - - - - - - - - - - - - - -

MARK S. WALLACH, 169 Delaware Avenue,
Buffalo, NY, 14202, Chapter 7 Trustee
of NanoDynamics, Inc.,
      Plaintiff-Appellant,

      -v.-                         17-2410-bk

DAVID SMITH,2403 Ridgepointe Drive,
Jonesboro, AR, 72404, JENNIFER SMITH,

**2403 Ridgepointe Drive, Jonesboro, AR,
72404,**
        **Defendants-Appellees.**

- - - - - - - - - - - - - - - - - - - -X

**FOR APPELLANT:**                    Robert J. Feldman, Gross
                                      Shuman P.C., Buffalo, N.Y.

**FOR APPELLEES:**                    Christopher P. Schueller,
                                      Esq. (Kathleen A. Murphy,
                                      Esq., on the brief), Buchanan
                                      Ingersoll & Rooney PC,
                                      Pittsburgh, PA.

Appeal from a judgment of the United States District Court for the Western District of New York (Vilardo, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Mark S. Wallach, as Chapter 7 Trustee of NanoDynamics, Inc., appeals from the judgment of the United States District Court for the Western District of New York, which affirmed an order of the Bankruptcy Court dismissing Wallach's claim for $700,000 plus interest on the balance of a pre-petition stock subscription agreement. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

David and Jennifer Smith (the "Smiths") executed a stock subscription agreement (the "Agreement") with NanoDynamics, Inc. ("Debtor") to purchase 2.5 million shares of stock at $1 per share. Under the Agreement, the Smiths would complete payment in stages by March 31, 2009, and Debtor would issue the number of shares corresponding to the money paid within five business days of each receipt of funds. The Smiths failed to complete payment by March 31, 2009, but did pay a total of $1.8 million in various amounts between March 9, 2009, and June 8, 2009. All but one of these payments occurred after the March 31, 2009 deadline. Rather than terminating the Agreement or suing for breach, the Debtor continued to issue shares of stock within five business days of each payment.

2

On July 27, 2009, when the Debtor filed a voluntary petition under Chapter 7 of Title 11 of the Bankruptcy Code, a balance of $700,000 remained untendered on the Agreement, and the petition listed the Agreement as an executory contract. Wallach filed an amended complaint on February 28, 2011 alleging that the Smiths were in breach of the Agreement as of the contractual deadline (April 1, 2009), and were liable for the remaining balance plus interest under New York Business Corporation Law ("BCL") § 628(a) and Section 542 of the Bankruptcy Code. The Smiths denied liability and asserted a number of counterclaims and affirmative defenses. The Bankruptcy Court's final opinion and order dismissed the claims for breach of contract and BCL § 628 on the ground that 11 U.S.C. § 365(c)(2) expressly prohibits a trustee from assuming and collecting upon a contract for the issuance of stock. The district court affirmed, concluding that "[b]ecause § 365(c)(2) decides the case, th[e] Court need not consider whether the Agreement was invalid due to the debtor's violation of the federal securities laws." Wallach v. Smith, 15-CV-1080(LJV), 2017 WL 2957829, at *6 (W.D.N.Y. July 11, 2017).

On review of the District Court's July 2017 decision affirming the December 2015 order of the Bankruptcy Court, see In re Nanodynamics, Inc., No. 09-13438 K, 2015 WL 8602618 (W.D.N.Y. Bankr. Dec. 11, 2015), we accept the bankruptcy court's factual findings unless clearly erroneous and review its conclusions of law *de novo*. Bell v. Bell (In re Bell), 225 F.3d 203, 209 (2d Cir. 2000).

Wallach claims entitlement to the remaining balance of $700,000 plus interest as a matter of contract law, notwithstanding that performance on the contract by Debtor is no longer possible. He relies on the common law rule that a "trustee in bankruptcy had authority to bring and maintain [an] action upon the stock subscription," even if "the corporation is bankrupt and a stock certificate cannot be issued," Allen v. Ryan, 219 A.D. 634, 635-36 (4th Dep't 1927); see In re Hannevig, 10 F.2d 941, 945 (2d Cir. 1925); and explains that this rule was codified in the New York Business Corporation Law, which provides that a "subscriber for shares of a corporation shall be under no obligation to the corporation for payment for

such shares *other than the obligation to pay the unpaid portion of his subscription....*"  BCL § 628 (emphasis added); see Chrysler Corp. v. Fedders Corp., 73 A.D.2d 504, 507 (1st Dep't 1979) (Section 628 "put[] into statutory form the common-law recognition of the fact that liability for unpaid subscriptions is contractual and, therefore, should run in favor of the corporation."); Lewis v. Dansker, 68 F.R.D. 184, 192 (S.D.N.Y. 1974).

This authority is unavailing.  Section 365 of Bankruptcy Code, codified in the 1978 Bankruptcy Reform Act ("BRA"), provides in plain terms that a "trustee may not assume or assign any executory contract ... if such contract is a contract ... to issue a security of the debtor."  11 U.S.C. § 365(c)(2).  Section 365 would thus specifically supersede any rule that would otherwise permit a trustee in bankruptcy to assume an executory contract for the sale of stock.  See In re Telligent, Inc., 268 B.R. 723, 737 (Bankr. S.D.N.Y. 2001) (concluding after a comprehensive review of the legislative history of the BRA that Section 365(c)(2) was specifically designed to defeat "a pre-petition agreement obligating the non-debtor to advance new cash or credit in exchange for the debtor's" stock).  Congress enacted the BRA in part as a response to industry concerns about the enforcement of unjust contracts such as the very Agreement sought to be assumed here.  See In re Ardent, Inc., 275 B.R. 122, 125-26 (Bankr. D.D.C. 2001); H.R. Rep. No. 95-595, at 348 (1977); Bankruptcy Reform Act of 1978: Hearings on S. 2266 Before the Subcommittee on Improvements in Judicial Machinery of The Judiciary, 95th Cong. 521, 858 (1977).  Wallach (a trustee) therefore cannot sue for money damages on the unpaid portion of an executory contract for the sale of stock under the common law rule or the BCL.

Wallach argues in the alternative that the proscription of Section 365(c)(2) does not apply to this case because the Agreement is non-executory, and the Bankruptcy Code only prevents the assumption of an executory contract.  See 11 U.S.C. § 365(c)(2).  There are multiple tests for determining whether an agreement is an "executory contract" within the meaning of Section 365(c).  The so-called Countryman Test defines an executory contract as "a contract under which the obligation of both the bankrupt and the other party to the

4

contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." In re Ellipsat, Inc., 480 B.R. 1, 6 (Bankr. D.D.C. 2012)(internal citations omitted); see also In re Spectrum Inf. Techs., Inc., 190 B.R. 741, 746-47 (Bankr. E.D.N.Y. 1996). The Second Circuit has also employed a less demanding inquiry characterized as the "some performance due" test, which defines an executory contract as one "on which performance remains due to some extent on both sides." Eastern Air Lines, Inc. v. Ins. Co. of Penn. (In re Ionosphere Clubs, Inc.), 85 F.3d 992, 998-99 (2d Cir. 1996) (quoting NLRB v. Bildisco & Bildisco, 465 U.S. 513, 522 n.6 (1984)). Courts examine the executory status of a contract as of the date the bankruptcy petition was filed. In re Ellipsat, Inc., 480 B.R. at 7 (citing In re Exide Techns., 607 F.3d 957, 962 (3d Cir. 2010)).

We need not resolve the question of which test applies because the Agreement is an executory contract under either test. Cf. In re Telligent, 268 B.R. at 732. It is undisputed that neither side tendered complete performance on the Agreement; $700,000 remained unpaid and 700,000 shares unissued when the Debtor filed under Chapter 11. Default on an obligation to make substantial monetary payments in exchange for shares is a material breach that renders a contract executory. See id. at 731 ("the buyer's breach of its payment obligation [is] material, making the contract executory on that side"); see also In re Bluman, 125 B.R. 359, 362 (Bankr. E.D.N.Y. 1991); In re Ardent, 275 B.R. at 124.

Wallach points out that since the Smiths materially breached the contract as of April 1, 2009, the Debtor was relieved of its obligations and had the option to rescind, and argues that this breach makes the contract non-executory. But a material breach by one party does not necessarily transform an executory contract into a non-executory one. "If the injured party chooses to go on" after an alleged breach, "he loses his right to terminate the contract because of the default." Apex Pool Equip. Corp. v. Lee, 419 F.2d 556, 562 (2d Cir. 1969). Under these circumstances, the animate contract remains executory. See id.; see, e.g., In re RLR Celestial Homes, Inc., 108 B.R. 36, 45 (Bankr. S.D.N.Y. 1989) ("[A]

5

contract is not deemed terminated and no longer executory simply because the debtor has defaulted or breached the contract before the commencement of a bankruptcy case." (internal citations omitted)).

Whether or not the Debtor could have proven a breach on April 1, 2009 and proceeded to terminate or rescind the Agreement, it did not do so. It elected instead to forbear any action against the Smiths and accept partial performance of $1.8 million over the course of three separate transactions. And the Debtor duly performed on its obligations under the Agreement by issuing its stock within five days of each allotted payment. In sum, the conduct of the Debtor in the months intervening between April 1, 2009 and the declaration of bankruptcy on July 27, 2009 shows that it considered the contract very much executory, and it listed the Agreement as an "executory contract" on its initial bankruptcy filing on July 27, 2009. App'x at 73, 127. Section 365(c)(2) precludes the trustee from assuming the Agreement and enforcing it against the Smiths, so the claims arising under the Agreement were properly dismissed.

Accordingly, and finding no merit in Wallach's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

6