# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

KATHERINE RICHARDS
BREWER, derivatively on behalf of
REGIONS FINANCIAL
CORPORATION and REGIONS
BANK,

        Plaintiff,

      v.

JOHN M. TURNER, JR., MARK A.
CROSSWHITE, NOOPUR DAVIS,
SAMUEL A. DI PIAZZA, JR.,
ZHANNA GOLODRYGA, J.
THOMAS HILL, JOHN D. JOHNS,
JOIA M. JOHNSON, RUTH ANN
MARSHALL, CHARLES D.
MCCRARY, JAMES T.
PROKOPANKO, LEE J.
STYSLINGER, III, JOSÉ S.
SUQUET, TIMOTHY VINES,
ALISON RAND, CAROLYN H.
BYRD, DAVID J. COOPER, SR.,
DON DEFOSSET, ERIC C. FAST,
O.B. GRAYSON HALL, JR., SUSAN
W. MATLOCK, JOHN E. MAUPIN
JR., DAVID J. TURNER, JR., C.
MATTHEW LUSCO, JOHN B.
OWEN, and TARA A. PLIMPTON,

        Defendants, and

REGIONS FINANCIAL
CORPORATION and REGIONS
BANK,

        Nominal Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2023-1284-KSJM

## ORDER DENYING APPLICATION TO CERTIFY INTERLOCUTORY APPEAL

1. The complaint in this derivative suit pleads an unusual *Caremark* claim involving a lawyer/whistleblower and a regulatory finding reached after a multi-year investigation. Regions Financial Corporation operates Regions Bank, a mid-sized regional bank. As alleged, in early 2019, a whistleblower—Regions' then-deputy general counsel—alerted management that Regions was employing illegal and manipulative processing methodologies to increase consumer overdraft fees. In November 2019, the whistleblower sent a draft complaint reviewed by the Regions' Board of Directors claiming that he was let go in part for "blowing the whistle" on the illegal overdraft fees. The complaint detailed the regulatory regime governing Regions' overdraft practices and stated that the whistleblower had raised the issue with management previously. This was a red flag. Regions' Board hired an attorney to investigate the claims but did not change its overdraft practices until July 2021.

2. The Consumer Financial Protection Bureau (the "CFPB") found that Regions chose not to change its overdraft practices in 2019, although it could have, to avoid losing the fee revenue generated by the illegal practice. The CFPB began investigating Regions' overdraft practices in 2020. In 2022, the CFPB issued findings that Regions had employed manipulative processing methodologies to increase overdraft fees over three years beginning in August 2018. The CFPB found that Regions "*was aware*" that its overdraft fee practice was illegal, and management "*could have stopped charging these fees*" as early as 2019, but it "instead . . . continued to charge them for years while it pursued changes to generate alternative fee revenue that would fully offset its expected revenue loss from . . . eliminating the [overdraft

2

fees]."[1] The findings were set out in a Consent Order, under which Regions paid $191 million. Regions denied the findings when entering the Consent Order.

3.    Plaintiff[2] owns Regions stock. Plaintiff brought this derivative action, asserting claims under *Caremark*[3] and *Massey*,[4] to recover the $191 million from fiduciaries who caused the bank to adopt and continue illegal overdraft practices.

4.    Defendants moved to dismiss the complaint under Court of Chancery Rules 23.1 and 12(b)(6). In a Memorandum Opinion dated September 29, 2025 (the "Opinion"), the court denied the Rule 23.1 motion and granted the Rule 12(b)(6) motion in part.[5] The court held that Plaintiff had adequately alleged particularized facts showing that a majority of the Demand Board faced a substantial likelihood of liability under Plaintiff's red-flags theory.[6] Thus demand was futile. The critical red flag was the whistleblower complaint, but other information known to the Board inferably made the whistleblower complaint more salient. The key allegation

---

[1] C.A. No. 2023-1284-KSJM, Docket ("Dkt.") 1 ("Compl."), Ex. 2 ¶ 2 (2022 Consent Order) (emphasis added); *see also id.* ¶ 28 ("The Bank made this decision to wait despite being informed by its compliance staff that eliminating Authorized-Positive Overdraft Fees before making the other changes presented less compliance risk 'by implementing corrective action of a known issue with timeliness and urgency,' since '[r]egulators have opined on the UDA(A)P risk associated with charging' Authorized-Positive Overdraft Fees.").

[2] Terms not defined in this Order have the same meaning as in *Brewer ex rel. Regions Fin. Corp. v. Turner*, 2025 WL 2769895 (Del. Ch. Sep. 29, 2025) ["Opinion"].

[3] *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996).

[4] *In re Massey Energy Co. Deriv. & Class Action Litig.*, 2011 WL 2176479 (Del. Ch. May 31, 2011).

[5] *See* Opinion.

[6] Opinion at *14.

3

supporting an inference of bad faith was that, after a multi-year investigation, the CFPB found that Regions could have ceased the illegal practice in 2019 but intentionally delayed compliance.

5. Defendants applied for certification of interlocutory appeal of the Opinion. Supreme Court Rule 42 permits certification of interlocutory appeal when "the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[7] If the "substantial issue" requirement is met, this court will then analyze eight factors concerning whether "there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[8] Rule 42 cautions that "[i]nterlocutory appeals should be exceptional, not routine, because they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[9] This language of Rule 42 serves as an interpretive principle, requiring that the court interpret the factors such that interlocutory appeals are the exception and not routine.[10]

---

[7] Supr. Ct. R. 42(b)(i).

[8] Supr. Ct. R. 42(b)(ii), (iii)(A)–(H).

[9] Supr. Ct. R. 42(b)(ii).

[10] Supr. Ct. R. 42(b)(iii) (stating that "[i]f the balance is uncertain, the trial court should refuse to certify the interlocutory appeal"); Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 18.04[c] (2d ed. 2024).

4

## Substantial Issue

6.     "The 'substantial issue' requirement is met when an interlocutory order decides a main question of law which relates to the merits of the case[.]"[11]   The Opinion resolved a substantial issue in two respects.  The Opinion resolved a Rule 12(b)(6) motion, which is a merits-based motion and is substantial in that way.[12]  The Opinion also resolved a Rule 23.1 motion, which raises a standing issue,[13] and thus qualifies as a substantial issue of material importance.[14]

## Multi-Factor Analysis

7.     Because the substantial-issue requirement is satisfied, the analysis turns to a multi-factor evaluation of whether a substantial benefit outweighs the costs of an interlocutory appeal.[15]   Rule 42 identifies eight factors to consider when conducting this balancing analysis.[16]  Defendants rely on only three of the Rule 42

---

[11] *Riskin v. Burns*, 2021 WL 303999, at *1 (Del. Ch. Jan. 29, 2021) (quoting *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2861717, at *1 (Del. Ch. July 22, 2008)).

[12] *Id.*

[13] *IBEW Local Union 481 Defined Contribution Plan & Tr. ex rel. GoDaddy, Inc. v. Winborne*, 301 A.3d 596, 617 (Del. Ch. 2023) ("Rule 23.1 imposes a pleading requirement so that demand principles can be applied at the outset of a case to determine whether the plaintiff has standing to sue." (citing *United Food & Com. Workers Union & Participating Food Indus. Empls. Tri-State Pension Fund*, 262 A.3d 1034, 1048 (Del. 2021) ["*Zuckerberg II*"])).

[14] *See WMI Liquid. Tr. v. XL Specialty Ins. Co.*, 2013 WL 4520982, at *1 (Del. Super. Aug. 23, 2013) (holding that "[w]hether a plaintiff has standing" is a classic "determination of a substantial issue . . . under Rule 42(b)"); *see also Gentile v. Rossette*, 2005 WL 3272361, at *2 (Del. Ch. Nov. 21, 2005) (noting that "whether the Plaintiffs have standing to pursue their share dilution claim" constituted a substantial issue under Rule 42(b)).

[15] *See* Supr. Ct. R. 42(b)(ii), (iii)(A)–(H).

[16] *Id.* 42(b)(iii).

5

factors—(B), (G), and (H). Defendants concede that the other five factors do not weigh in favor off certifying interlocutory appeal by failing to advance arguments to that effect in the Application.

8.      **Factor (B)** asks whether "[t]he decisions of the trial courts are conflicting upon the question of law."[17]  Defendants argue that the Opinion departs from settled law in two respects.[18]  First, they say that the court erroneously applied the "reasonably conceivable" standard when assessing whether the Demand Board members faced a "substantial likelihood of liability" resulting from the *Caremark* claim.[19]  Second, they contend that the court failed to apply the presumption of good faith when finding that Plaintiff adequately alleged bad faith sufficient to support a *Caremark* claim.[20]

9.      Defendants' first Factor (B) argument centers on two aspects of the court's demand futility analysis—the "plead with particularity" requirement[21] and the "substantial likelihood of liability" standard.[22]

---

[17] *Id.* 42(b)(iii)(B).

[18] Dkt. 35 ("Application") ¶ 2.

[19] *Id.* ¶ 15.

[20] *Id.* ¶ 18.

[21] Ct. Ch. R. 23.1 ("The complaint in a derivative action must: (1) *state with particularity*: (A) any effort by the derivative plaintiff to obtain the desired action from the entity; and (B) the reasons for not obtaining the action or not making the effort[.]" (emphasis added)).

[22] *Zuckerberg II*, 262 A.3d at 1059 ("[C]ourts should ask . . . on a director-by-director basis when evaluating allegations of demand futility: . . . whether the director faces a *substantial likelihood of liability* on any of the claims that would be the subject of the litigation demand[.]" (emphasis added)).

10. "It is generally understood that for a fact to be pled 'with particularity,' it must have some indicia of specificity."[23] A court need not accept as true "conclusory allegations."[24] A plaintiff must do more than provide notice pleading permitted under Rule 8.[25] The Rule 23.1 particularity requirement, however, is not as strict as the Rule 9 particularity requirement because Rule 23.1 does not call for "newspaper facts."[26] "[E]ven with Section 220 documents in hand, derivative plaintiffs would be

---

[23] *Elburn ex rel. Invs. Bancorp. Inc. v. Albanese,* 2020 WL 1929169, at *7 (Del. Ch. Apr. 21, 2020) ["*Invs. Bancorp. I*"], *appeal denied sub nom. Albanese v. Elburn ex rel. Invs. Bancorp, Inc.*, 237 A.3d 820 (Del. 2020) (TABLE) (citation modified); *see also United Food & Com. Workers Union v. Zuckerberg*, 250 A.3d 862, 876–77 (Del. Ch. 2020) ["*Zuckerberg I*"] ("Rule 23.1 requires that a plaintiff allege specific facts[.]"); *Hughes*, 2020 WL 1987029, at *12 (same); *In re GoPro, Inc.*, 2020 WL 2036602, at *8 (Del. Ch. Apr. 28, 2020) ("The plaintiff pleading demand futility must inform the defendants of the precise transactions at issue by describing with particularity the *specific* misconduct in which each defendant is alleged to have participated." (citation modified) (emphasis added)).

[24] *Glean Tech Fund II LP v. McIntosh*, 2025 WL 2505049, at *5 (Del. Ch. Sep. 2, 2025) ("The plaintiff is entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences.") (internal quotation marks omitted) (quoting *White v. Panic*, 782 A.2d 543, 549 (Del. 2001)); *Sciannella v. AstraZeneca UK Ltd.*, 2024 WL 3327765, at *15 (Del. Ch. July 8, 2024) (same); *Khanna v. McMinn*, 2006 WL 1388744, at *12 (Del. Ch. May 9, 2006) (same); *see also Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008) ("Conclusory allegations are not considered as expressly pleaded facts or factual inferences." (internal quotation marks omitted) (quoting *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,* 845 A.2d 1040, 1048 (Del.2004))); *Hughes v. Xiaoming Hu*, 2020 WL 1987029, at *12 (Del. Ch. Apr. 27, 2020) ("Under the heightened pleading requirements of Rule 23.1, "[conclusory] allegations of fact or law not supported by the allegations of specific fact may not be taken as true." (quoting *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000))).

[25] *Invs. Bancorp I*, 2020 WL 1929169, at *7–9.

[26] *Elburn ex rel. Invs. Bancorp. Inc. v. Albanese,* 2020 WL 4194865, at *4–5 (Del. Ch. July 21, 2020) ["*Invs. Bancorp. II*"] (denying application to certify interlocutory appeal), *appeal denied sub nom. Albanese v. Elburn ex rel. Invs. Bancorp, Inc.*, 237 A.3d 820 (Del. 2020) (TABLE).

7

hard pressed to plead . . . 'who, what, when, where and how' facts about fiduciary wrongdoing" as derivative plaintiffs typically do not have the means to know those "newspaper" facts like fraud claimants do.[27]  Still, the particularity requirement of Rule 9 remains a "useful guidepost."[28]  Rule 9 requires, "with respect to the subjects it treats, some greater degree of specificity in pleading. The rule gives to defendants a right to insist that the circumstances constituting the alleged fraud be specified."[29]  Rule 23.1 is still a pleading-stage requirement.  "While Rule 23.1 requires that a plaintiff allege specific facts, 'he need not plead evidence.'"[30]

11.    Moreover, "once a plaintiff pleads particularized allegations, then the plaintiff is entitled to all 'reasonable inferences that logically flow from particularized facts alleged by the plaintiff."[31]  As the high court explained in *Marchand*, "[t]he

---

[27] *Invs. Bancorp II*, 2020 WL 4194865, at *5; *Invs. Bancorp I*, 2020 WL 1929169, at *8 (observing that derivative plaintiffs asserting fiduciary breaches "were not in the board room, and, unlike fraud, were not the direct targets of the wrongful behavior.").

[28] *See Invs. Bancorp I*, 2020 WL 1929169, at *9 (describing this court's "articulation of Rule 9(b)'s pleading requirements" in *Kahn Brothers & Co., Inc. Profit Sharing Plan and Tr. v. Fischbach Corp.*, 1989 WL 109406, at *4 (Del. Ch. Sept. 19, 1989), as "a useful guidepost for Rule 23.1").

[29] *Kahn*, 1989 WL 109406, at *4.

[30] *Hughes*, 2020 WL 1987029, at *10 (quoting *Aronson*, 473 A.2d at 816); *see also* *IBEW*, 301 A.3d at 617 (same); *Ontario Provincial Council of Carpenters' Pension Tr. Fund v. Walton*, 2023 WL 3093500, at *29 (Del. Ch. Apr. 26, 2023) (same); *Zuckerberg I*, 250 A.3d at 877 (same); *In re Ezcorp Inc. Consulting Agreement Deriv. Litig.*, 2016 WL 301245, at *33 (Del. Ch. Jan. 25, 2016) (same).

[31] *Hughes*, 2020 WL 1987029, at *10 (quoting *Beam*, 845 A.2d at 1048) (citation modified); *see also* *Marchand v. Barnhill*, 212 A.3d 805, 818 (Del. 2019); *Melbourne Mun. Firefighters' Pension Tr. Fund ex rel. Qualcomm, Inc. v. Jacobs*, 2016 WL 4076369, at *1 n.1 (Del. Ch. Aug. 1, 2016) ("When considering a motion to dismiss under Rule 23.1, this Court affords plaintiffs all reasonable inferences that logically flow from the particularized facts alleged in the complaint." (quoting *Postorivo v. AG Paintball Hldgs., Inc.*, 2008 WL 553205, at *4 (Del. Ch. Feb. 29, 2008))); *Teamsters*

8

standard for conducting this inquiry at the demand futility stage is well balanced, requiring that the plaintiff plead facts with particularity, but also requiring that this Court draw all reasonable inferences in the plaintiff's favor."[32]

12. The Opinion correctly identified and applied the Rule 23.1 "plead with particularity"[33] standard. It also drew reasonable inferences from particularized facts—the whistleblower complaint, the July 2018 Bulletin, and the CFPB findings, for example.[34] Defendants do not argue that the Opinion failed to identify the

---

*Union 25 Health Servs. & Ins. Plan v. Baiera,* 119 A.3d 44, 56 (Del. Ch. 2015) ("I accept as true Plaintiff's particularized allegations of fact and draw all reasonable inferences that logically flow from those allegations in Plaintiff's favor." (citing *White,* 782 A.2d at 549)).

[32] *Marchand,* 212 A.3d at 818.

[33] The Opinion used a variant of "particular" when describing or applying the standard eight times. *See Opinion* at *7 ("Under Rule 23.1, a derivative complaint must 'state with *particularity*: . . . any effort by the derivative plaintiff to obtain the desired action from the entity; and . . . the reasons for not obtaining the action or not making the effort[.]'" (emphasis added) (quoting Ct. Ch. R. 23.1(a)(1))); *id.* at *8 ("To plead demand futility, the complaint must allege '*particularized* factual statements that are essential to the claim.' Although the requirement of factual *particularity* is a heightened pleading requirement, it 'does not entitle a court to discredit or weigh the persuasiveness of well-pled allegations.' If a plaintiff pleads *particularized* facts, those factual allegations 'are accepted as true' and '[p]laintiffs are entitled to all reasonable factual inferences that logically flow from the *particularized* facts alleged[.]'" (emphases added) (first quoting *Brehm,* 746 A.2d at 254; and then quoting *Zuckerberg I,* 250 A.3d at 877)); *id.* at *8 ("To adequately allege demand futility, Plaintiff must plead *particularized* facts creating reason to doubt that at least seven of the fourteen Demand Board members were incapable of impartially considering a demand." (emphasis added)); *id.* at *10 ("To state a *Caremark* claim, a plaintiff must allege *particularized* facts . . . .") (emphasis added)); *id.* at *10 ("To adequately allege a red-flags theory, a plaintiff must plead '*particularized* facts that the board knew of red flags but consciously disregarded them in bad faith.'" (emphasis added) (quoting *Teamsters Loc. 443 Health Servs. & Ins. Plan v. Chou,* 2020 WL 5028065, at *17 (Del. Ch. Aug. 24, 2020)).

[34] Opinion at *26–31 ("In sum, nine of the fourteen Demand Board members face a substantial likelihood of liability under *Caremark*." *Id.* at *14.).

9

particularity requirement or that the red flags were not pled with sufficient particularity.

13.    Defendants' primary criticism concerns how the Opinion interpreted the "substantial likelihood of liability" standard.  The standard derives from *Aronson*.[35] Before *Aronson*, Delaware law suggested that a plaintiff could show that demand was futile by naming a director as a defendant in the complaint or by alleging that the director was involved in the challenged decision.[36]  *Aronson* dispelled that notion by introducing the "substantial likelihood of liability" standard.

14.    Although *Aronson* uses the phrase "substantial likelihood," "[t]o plead that a director faces a substantial risk of liability, a plaintiff does not have to

---

[35] *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984) ("[T]he mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors, although in rare cases a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.").

[36] *See, e.g.*, *Kaufman v. Beal*, 1983 WL 20295, at *4 (Del. Ch. Feb. 25, 1983) (holding that failure to make pre-suit demand is excused where the derivative plaintiff pleads facts "which, if true, would show that the business judgment rule would not protect the transaction from judicial scrutiny"); *Miller v. Loft , Inc.*, 153 A. 861, 862 (Del. Ch. 1931) ("The rule is well settled in this State that if by reason of hostile interest or guilty participation in the wrongs complained of, the directors cannot be expected to institute suit[.]"); *Baker v. Bankers' Mortg. Co.*, 129 A. 775, 776 (Del. Ch. 1925) (holding that demand is not required "for obvious reasons" where the corporate managers were "guilty [of] participation in the wrongs complained of"); *Fleer v. Frank H. Fleer Corp.*, 125 A. 411, 414 (Del. Ch. 1924) ("Where the demand if made would be directed to the particular individuals who themselves are the alleged wrongdoers and who therefore would be invited to sue themselves, the rule is settled that a demand and refusal is not requisite.").  More recent cases preceding *Aronson* acknowledged the problem with allowing derivative plaintiffs to evade the demand requirement by merely adding the corporate directors to its complaint, and therefore held that merely adding directors and making conclusory allegations of alleged wrongdoing were insufficient to excuse demand. *See, e.g.*, *Kaufman*, 1983 WL 20295, at *4.

demonstrate a reasonable probability of success on the claim" sufficient to support a preliminary injunction.[37]  In *Rales*, the Delaware Supreme Court rejected that requirement as "unduly onerous," clarifying that the plaintiff need only "make a threshold showing, through the allegation of particularized facts, that [its] claims have some merit."[38]  *Aronson* and *Rales* remains good law.[39]

15.     The Opinion interpreted the "have some merit" language of *Rales* to require application of the Rule 12(b)(6) standard, albeit based on particularized facts.[40]  Many cases of this court have taken the same approach.[41]  Corbat cited by

---

[37] *Hughes*, 2020 WL 1987029, at *12.

[38] *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993) (citing *Aronson*, 473 A.2d at 811–12).

[39] *Zuckerberg II*, 262 A.3d at 1059 ("Finally, because the three-part test is consistent with and enhances *Aronson*, *Rales*, and their progeny, . . . cases properly construing *Aronson, Rales*, and their progeny remain good law.").  Defendants do not cite *Aronson* or *Rales* in the Application.

[40] Opinion at *9.

[41] I have done so many times based on my reading of *Rales*.  *See, e.g., In re Plug Power Inc. S'holder Litig.*, 2025 WL 1277166, at *9 (Del. Ch. May 2, 2025); *Hanna v. Paradise*, 2025 WL 1836642, at *8 (Del. Ch. July 3, 2025); *Grabski ex rel. Coinbase Glob., Inc. v. Andreessen*, 2024 WL 390890, at *7 (Del. Ch. Feb. 1, 2024); *City of Detroit Police & Fire Ret. Sys. ex rel. NiSource, Inc. v. Hamrock*, 2022 WL 2387653, at *11 (Del. Ch. June 30, 2022).  Others have taken a similar approach.  *See, e.g., Lipman v. GPB Cap. Hldgs. LLC*, 2020 WL 6778781, at *1 (Del. Ch. Nov. 18, 2020) ("I find that the allegations of the Complaint . . . make the threat of liability to the general partner, and its controller, such that it is *reasonably conceivable* that the general partner could not bring its business judgment to bear on any demand involving these allegations." (emphasis added)); *Chou*, 2020 WL 5028065, at *25 (finding that the "Plaintiffs have demonstrated that a majority of [the board] faces a substantial likelihood of liability by pleading particularized facts from which it is *reasonably conceivable* that a majority of the Board knew of evidence of corporate misconduct—the proverbial red flag—yet acted in bad faith by consciously disregarding its duty to address that misconduct" (emphasis added) (internal quotation marks omitted)); *In re Fitbit, Inc. S'holder Derivative Litig.*, 2018 WL 6587159, at *12–13 (Del. Ch. Dec. 14, 2018) ("In this case, the demand futility question as to Count II turns on whether a majority of

11

Defendants is a good example.[42] Defendants rely on *Corbat* for the proposition that "[s]tating a claim is necessary to plead a substantial likelihood of liability, but it is not sufficient" and "reasonably conceivable is not the same thing as being substantially likely."[43] But *Corbat* does not stand for this proposition at all. The portion of *Corbat* that the Application quotes is as follows:

> The Complaint makes it reasonably conceivable that the directors, despite these red flags, failed to take actions that

the Demand Board faces a substantial likelihood of liability on the *Brophy* claim . . . . I find that the causal connection *is pled with particularity and is reasonably conceivable*. Plaintiffs have adequately pled that the information at issue was material and nonpublic." (emphasis added)); *Pettry ex rel. FedEx Corp. v. Smith*, 2021 WL 2644475, at *12–13 (Del. Ch. June 28, 2021), *aff'd*, 273 A.3d 750 (Del. 2022) ("It is not *reasonably conceivable* that the Board acted in bad faith in consciously disregarding its duty to oversee the affairs of the Company. . . . Plaintiff has *failed to plead particularized facts that make it reasonably conceivable* a majority of the [defendants] face a substantial likelihood of liability for ignoring red flags in a manner demonstrating a conscious failure to monitor or oversee corporate operations." (emphasis added)); *Oklahoma Firefighters Pension & Ret. Sys. v. Corbat*, 2017 WL 6452240, at *2 (Del. Ch. Dec. 18, 2017) ("To my mind, the allegations of the Complaint, if true, fail to demonstrate scienter. The Complaint does not make it *reasonably conceivable* that the directors acted in bad faith." (emphasis added)); *Silverberg ex rel. Dendreon Corp. v. Gold*, 2013 WL 6859282, at *13 (Del. Ch. Dec. 31, 2013) ("I conclude that [the plaintiff] has pled particularized facts sufficient to show that it is *reasonably conceivable* that he will be able to satisfy the first factor of a *Brophy* claim." (emphasis added)); *Cent. Laborers' Pension Fund v. Karp*, 2025 WL 1213104, at *19 & n.204 (Del. Ch. Apr. 25, 2025) (stating that the court "must view well-pleaded facts holistically in assessing demand futility" and that "the test is whether the complaint alleges a constellation of particularized facts which, when viewed holistically, *support a reasonably conceivable inference* that an improper purpose sufficiently infected a director's decision to such a degree that the director could be found to have acted in bad faith" (emphasis added) (internal quotation marks omitted) (quoting *IBEW*, 301 A.3d at 623)).

[42] *Corbat*, 2017 WL 6452240.

[43] Application ¶ 15.

12

may have avoided loss to the company. That is not the standard, however.[44]

The next two sentences of the decision, which Defendants do not quote, state:

> To my mind, the allegations of the Complaint, if true, fail to demonstrate scienter. The Complaint does not make it reasonably conceivable that the directors acted in bad faith.[45]

As the unquoted sentences reflect, the court's statement, "[t]hat is not the standard," refers to the *Caremark* standard, which requires bad faith.[46] As the unquoted passage also reflects, when determining whether a complaint adequately alleges a substantial likelihood of liability from a *Caremark* claim including bad faith, the court applied the reasonably conceivable standard based on particularized facts.

16. Furthermore, as held in *Marchand* and elsewhere, derivative plaintiffs are entitled to all reasonable inferences that logically flow from particularized allegations.[47] No meaningful distinction exists between what is reasonably conceivable based on particularized allegations, on the one hand, and what is reasonably inferable from particularized allegations, on the other. Indeed, decisions of this court have used "reasonably conceivable" and "reasonable inference" interchangeably when analyzing demand futility.[48]

---

[44] *Corbat*, 2017 WL 6452240, at *2.

[45] *Id.*

[46] *Id.*

[47] *Marchand*, 212 A.3d at 818; *Invs. Bancorp I*, 2020 WL 1929169, at *6; *McIntosh*, 2025 WL 2505049, at *5.

[48] *See, e.g.*, *IBEW*, 301 A.3d at 619, 623 ("Delaware decisions have read [Rule 9(b) and Rule 23.1] together to require that a plaintiff plead particularized facts that can support a *reasonable inference* about the directors' state of mind. . . . At the pleading

13

17. Defendants cite no case in conflict with the Opinion, and their arguments under Factor (B) are misguided. Defendants say that, "[i]nstead of scrutinizing the complaint for the required specific, factual allegations of bad faith, the Opinion held that demand was futile based on inferences it found to be 'reasonably conceivable' from unproven allegations."[49] But a plaintiff "need not plead evidence" nor prove anything at the pleading stage.[50] And the standard requires the court to accept the "unproven allegations" as true where—as here—they are pled with specificity.[51]

18. Defendants' second Factor (B) argument also does not work because the Opinion applied the presumption of good faith correctly. Defendants argue that any response to a red flag—even a delayed response—entitles a director to a presumption of good faith. The instinct behind this argument is understandable. Boards enjoy

---

stage, the test is whether the complaint alleges a constellation of particularized facts which, when viewed holistically, support a *reasonably conceivable inference* that an improper purpose sufficiently infected a director's decision to such a degree that the director could be found to have acted in bad faith." (emphasis added)); *Chou*, 2020 WL 5028065, at *1, *25 ("In order to survive a motion to dismiss under Rule 23.1, a plaintiff must raise an inference that demand on the board to undertake the action would have been futile. Typically, in the *Caremark* context, this requires a pleading of specific facts from which the Court may infer a substantial likelihood of liability on the part of a majority of the board on whom demand would have been made. . . . The Plaintiffs have demonstrated that a majority of ABC's Board faces a substantial likelihood of liability by pleading particularized facts from which it is *reasonably conceivable* that a majority of the Board "knew of evidence of corporate misconduct— the proverbial 'red flag'—yet acted in bad faith by consciously disregarding its duty to address that misconduct."(emphasis added)).

[49] Application ¶ 14.

[50] *Hughes*, 2020 WL 1987029, at *10 (quoting *Aronson*, 473 A.2d at 816).

[51] *See Zuckerberg II*, 262 A.3d at 1048; *Lebanon Cnty. Empls.' Ret. Fund v. Collis*, 311 A.3d 773, 804–05 (Del. 2023); *Armstrong*, 2020 WL 756965, at *14.

14

great latitude and deference when formulating their compliance systems and strategy. But the reality is that it is possible to draw a logical inference, based on particularized allegation, that delay was in bad faith.

19. As the Opinion observed, "[c]onsciously delaying actions" to correct practices "that a Board knows to be illegal supports an inference of bad faith."[52] For sure, good-faith delay versus bad-faith delay is a difficult distinction to draw generally. And Defendants cite to a line of cases where this court could not infer that independent directors acted in bad faith where the plaintiff alleged that the board ultimately responded to red flags.[53] But this case involves a distinguishing factor, one that Defendants essentially urge this court (and the high court) to ignore. Here, Plaintiff alleges that a regulator found, after a multi-year investigation, that the company could have corrected course at a far earlier time but intentionally delayed compliance to generate greater profits based on the illegal activity. This unusual fact supports an inference that the delay was bad faith.

20. Defendants also argue that the conclusion that the Board knew that the overdraft fees were illegal conflicts with the the July 2018 Bulletin. According to Defendants, the bulletin said only that the fees might be illegal, not that they were in fact illegal. Of course, according to the complaint, Regions' deputy general counsel told the board that they fees were in fact illegal, and the CFPB fined Regions $191 million on that basis. From these facts, it is reasonable to infer that the fees were

---

[52] Opinion at *13.

[53] Application ¶ 16.

15

indeed illegal. Defendants can present expert testimony to the contrary in due course.

21. Defendants further argue that inferring bad faith from the Board's conduct "turn[s] the presumption of good faith on its head."[54] But it is Defendants who fall into this trap. In their ardent advocacy, they turn the pleading-stage, plaintiff-friendly inferences into defense-friendly inferences, asking the court to use the presumption of good faith to override particularized facts from which the court can infer the opposite. That's not how the presumption of good faith works.

22. For these reasons, Defendants fails to show that the Opinion conflicts with other decisions of this court. Factor (B) does not weigh in favor of grating the Application.

23. ***Factor (G)*** asks whether interlocutory review could terminate the litigation.[55] This factor is rarely dispositive; were it so, then it would be appropriate to certify all decisions denying motions to dismiss in whole or in part. This factor does not weigh in favor of interlocutory appeal here in any event. Because the decision declined to resolve the plaintiff's *Massey* claim, even a successful appeal would not terminate the litigation. Rather, it might result in a trial court judge's worst nightmare: remand. And because the red-flag claim credited the CFPB's finding that the Board intentionally collected illegal overdraft fees for a period after

---

[54] Application ¶ 19.

[55] Supr. Ct. R. 42(b)(iii)(G).

2019, this claim would warrant significant analysis.[56]  Factor (B) does not weigh in favor of granting the Application.

24.     *Factor (H)* asks whether "[r]eview of the interlocutory order may serve considerations of justice."[57]   For this point, Defendants advance a floodgates argument, casting the Opinion as likely to "sow uncertainty" because it supposedly departs so dramatically from Delaware law.[58]   Not so.   As discussed above, the Opinion is consistent with Delaware law.   The approach of the Opinion has been deployed repeatedly since *Marchand*.   Yet *Caremark* claims remain "among the hardest claims to plead and prove."[59]   Indeed, despite the increased attention paid to

---

[56] The Application states that "the Opinion *disclaimed reliance*" on the *Massey* theory. Application ¶ 21 (emphasis in original).  But that is not what the Opinion says.  The court is not like a counterparty to a Merger Agreement, being forced to disclaim reliance on things like extra-contractual representation.  Rather, the court favored judicial efficiency and conservatism over completeness.

[57] Supr. Ct. R. 42(b)(iii)(H).

[58] Application ¶ 22.

[59] *In re Clovis Oncology, Inc. Derivative Litig.*, 2019 WL 4850188, at *12 (Del. Ch. Oct. 1, 2019) ("[I]t is now indubitably understood, and oft-repeated, that a *Caremark* claim is among the hardest to plead and prove."); *see also City of Birmingham Ret. & Relief Sys. v. Good*, 177 A.3d 47, 55 (Del. 2017) ("Because of the difficulties in proving bad faith director action, a *Caremark* claim is 'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'" (quoting *Caremark*, 698 A.2d at 967)); *Morris v. Spectra Energy Partners (DE) GP, LP*, 246 A.3d 121, 133 n.57 (Del. 2021) (same); *McElrath v. Kalanick*, 224 A.3d 982, 992 n.46 (Del. 2020) (same); *In re MetLife Inc. Deriv. Litig.*, 2020 WL 4746635, at *1 (Del. Ch. Aug. 17, 2020) ("A corporate oversight claim under the *Caremark* rationale . . . is notoriously difficult for plaintiffs."); *Firemen's Ret. Sys. of St. Louis on behalf of Marriott Int'l, Inc. v. Sorenson*, 2021 WL 4593777, at *11 (Del. Ch. Oct. 5, 2021) ("As often stated, oversight liability under *Caremark* is 'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'" (quoting *Caremark*, 698 A.2d at 967)); *Ritchie ex rel. Corcept Therapeutics, Inc. v. Baker*, 2025 WL 2048014 (Del. Ch. July 22, 2025) (same).

17

*Caremark* claims since *Marchand*, this court has dismissed nearly 80% of derivatively

pled *Caremark* claims (a statistic that includes the Opinion).[60]

---

[60] *See* Opinion (denying dismissal); *Ritchie*, 2025 WL 2048014 (Del. Ch. July 22, 2025) (granting dismissal); *Salazar v. Quagliano*, C.A. No. 2024-1004-JTL (Del. Ch. July 1, 2025) (TRANSCRIPT) (denying dismissal); *Plug Power*, 2025 WL 1277166 (granting dismissal); *In re Fox Corp. Deriv. Litig.*, 2024 WL 5233229 (Del. Ch. Dec. 27, 2024) (denying dismissal); *Seafarer's Pension Plan derivatively ex rel. Bank of Am. Corp. v. Moynihan*, C.A. No. 2023-0787-JTL (Del. Ch. Oct. 11, 2024) (TRANSCRIPT) (granting dismissal); *In re Transunion Deriv. S'holder Litig.*, 2024 WL 4355571 (Del. Ch. Oct. 1, 2024) (granting dismissal); *Schertz v. Garcia II*, C.A. No. 2023-0600-KSJM (Del. Ch. Sept. 25, 2024) (TRANSCRIPT) (granting dismissal); *In re Kraft Heinz Demand Refused Deriv. S'holder Litig.*, 2024 WL 3493957 (Del. Ch. July 19, 2024) (granting dismissal); *Bricklayers Pension Fund of W. Pennsylvania ex rel. Centene Corp. v. Brinkley*, 2024 WL 3384823 (Del. Ch. July 12, 2024) (granting dismissal); *Harper ex rel. T-Mobile US, Inc. v. Sievert*, 2024 WL 2796418 (Del. Ch. May 31, 2024) (granting dismissal); *Ryniker Cons., LLC v. Cebula*, C.A. No. 2023-0111-PAF (Del. Ch. May 9, 2024) (TRANSCRIPT) (granting dismissal); *IMG Hldg. LLC ex rel. JPMorgan Chase & Co. v. Dimon*, 2024 WL 1634878 (Del. Ch. Apr. 16, 2024) (granting dismissal); *In re Nikola Deriv. Litig.*, C.A. No. 2022-0023-KSJM (Del. Ch. Apr. 9, 2024) (TRANSCRIPT) (granting dismissal), *Clem v. Skinner*, 2024 WL 668523 (Del. Ch. Feb. 19, 2024) (granting dismissal); *Conte ex rel. Skechers U.S.A., Inc. v. Greenberg*, 2024 WL 413430 (Del. Ch. Feb. 2, 2024) (granting dismissal); *Segway Inc. v. Cai,* 2023 WL 8643017 (Del. Ch. Dec. 14, 2023) (granting dismissal); *In re McDonald's Corp. S'holder Deriv. Litig.*, 291 A.3d 652 (Del. Ch. 2023) (granting dismissal); *In re ProAssurance Corp. S'holder Deriv. Litig.*, 2023 WL 6426294 (Del. Ch. Oct. 2, 2023) (granting dismissal); *Newman v. KKR Phorm Invs., L.P.*, 2023 WL 5624167 (Del. Ch. Aug. 31, 2023) (granting dismissal); *Collis*, 2022 WL 17841215 (Del. Ch. Dec. 22, 2022) (granting dismissal); *Constr. Indus. Laborers Pension Fund v. Bingle*, 2022 WL 4102492 (Del. Ch. Sept. 6, 2022) (granting dismissal); *NiSource,* 2022 WL 2387653 (granting dismissal); *In re Camping World Hldgs., Inc. S'holder Deriv. Litig.,* 2022 WL 288152 (Del. Ch. Jan. 31, 2022) (granting dismissal); *Sorenson*, 2021 WL 4593777 (granting dismissal); *In re Boeing Co. Deriv. Litig.,* 2021 WL 4059934 (Del. Ch. Sept. 7, 2021) (denying dismissal); *In re Zimmer Biomet Hldgs., Inc. Deriv. Litig.*, 2021 WL 3779155 (Del. Ch. Aug. 25, 2021 (granting dismissal); *In re TrueCar, Inc. S'holder Deriv. Litig.*, 2020 WL 5816761 (Del. Ch. Sept. 30, 2020) (granting dismissal); *Chou*, 2020 WL 5028065 (denying dismissal); *Metlife*, 2020 WL 4746635 (granting dismissal); *GoPro*, 2020 WL 2036602 (granting dismissal); *Hughes*, 2020 WL 1987029 (denying dismissal); *Owens v. Mayleben*, 2020 WL 748023 (Del. Ch. Feb. 13, 2020) (granting dismissal); *Fisher v. Sanborn*, 2021 WL 1197577 (Del. Ch. Mar. 30, 2021) (granting dismissal); *In re LendingClub Corp. Deriv. Litig.*, 2019 WL 5678578 (Del. Ch. Oct. 31, 2019) (granting dismissal); *Clovis*, 2019 WL

25. In the end, however, no Delaware Supreme Court case has expressly stated the following: To show a substantial likelihood of liability, a plaintiff must meet the Rule 12(b)(6) standard based on particularized facts. That would be a helpful clarification of Delaware law. Thus, although the Opinion does not conflict with other decisions of this court, placing this issue before the Supreme Court could be viewed as serving the considerations of justice.

26. In sum, only one of the Rule 42 factors relied on by Defendants—Factor (H)—weigh in favor of granting the Application. It is tempting to certify interlocutory appeal on the basis of Factor (H) alone. The high court has only weighed in on *Caremark* once since *Marchand*.[61] And although the number of *Caremark* cases remains a small percentage of the court's docket, *Marchand* arguably breathed new life into *Caremark* (at least in the eyes of the plaintiff's bar), resulting in significantly more *Caremark* claims (and, as noted above, a very high percentage of dismissals). Defendants raise one of many aspects of the *Caremark* doctrine that could stand clarification.[62] But interlocutory appeals should be exceptional because they disrupt

---

4850188 (denying dismissal); *Rojas v. Ellison*, 2019 WL 3408812 (Del. Ch. July 29, 2019) (granting dismissal). This list intentionally omits *Giuliano v. Grenfell-Gardner*, 2025 WL 2502176 (Del. Ch. Sept. 2, 2025), which is not a derivative suit. Any other omissions are inadvertent—Rule 42 imposes a tight timeline and the court did its best.

[61] *Collis*, 311 A.3d 773.

[62] *See, e.g.*, *NiSource*, 2022 WL 2387653, at *20 ("No *Caremark* case has yet gone to trial, or proceeded meaningfully past the pleading stage, so many open issues remain. Those issues include what form of causation must be shown to hold a fiduciary liable under *Caremark* for their bad faith inaction, or who would bear the burden of proof on that issue. Even the elements for establishing liability are unsettled.").

the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources. Thus on balance, in the judgment of this court, the soft support of one of the eight factors does not warrant certification of interlocutory appeal.

27. Defendants advance a spirited and compelling counternarrative to the complaint. But that counternarrative is based mainly on defendant-friendly inferences or facts outside the pleadings that the court cannot consider. If the discovery record proves as favorable to Defendants as their counternarrative promises, then this case could end early and cheaply, or Defendants will prevail at trial. But it does not seem appropriate to pause these proceedings to allow the exceptional course of an interlocutory appeal. The Application is denied.

*/s/ Kathaleen St. J. McCormick*
Chancellor Kathaleen St. J. McCormick
Dated: October 30, 2025